Justice ALITO, dissenting.
As the Court acknowledges, "this Court 'repeatedly has reviewed and upheld Florida's capital sentencing statute over the past quarter of a century.' " Ante, at 623. And as the Court also concedes, our precedents hold that " 'the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.' " Ante, at 623 (quoting Hildwin v. Florida, 490 U.S. 638, 640-641, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam ); emphasis added);
*625 see also Spaziano v. Florida, 468 U.S. 447, 460, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). The Court now reverses course, striking down Florida's capital sentencing system, overruling our decisions in Hildwin and Spaziano, and holding that the Sixth Amendment does require that the specific findings authorizing a sentence of death be made by a jury. I disagree.
I
First, I would not overrule Hildwin and Spaziano without reconsidering the cases on which the Court's present decision is based. The Court relies on later cases holding that any fact that exposes a defendant to a greater punishment than that authorized by the jury's guilty verdict is an element of the offense that must be submitted to a jury. Ante, at 621. But there are strong reasons to question whether this principle is consistent with the original understanding of the jury trial right. See Alleyne v. United States, 570 U.S. ----, ---- - ----, 133 S.Ct. 2151, 2172-2173, 186 L.Ed.2d 314 (2013) (ALITO, J., dissenting). Before overruling Hildwin and Spaziano, I would reconsider the cases, including most prominently Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), on which the Court now relies.
Second, even if Ring is assumed to be correct, I would not extend it. Although the Court suggests that today's holding follows ineluctably from Ring, the Arizona sentencing scheme at issue in that case was much different from the Florida procedure now before us. In Ring, the jury found the defendant guilty of felony murder and did no more. It did not make the findings required by the Eighth Amendment before the death penalty may be imposed in a felony-murder case. See id., at 591-592, 594, 122 S.Ct. 2428 ; Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) ; Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Nor did the jury find the presence of any aggravating factor, as required for death eligibility under Arizona law. Ring, supra, at 592-593, 122 S.Ct. 2428. Nor did it consider mitigating factors. And it did not determine whether a capital or noncapital sentence was appropriate. Under that system, the jury played no role in the capital sentencing process.
The Florida system is quite different. In Florida, the jury sits as the initial and primary adjudicator of the factors bearing on the death penalty. After unanimously determining guilt at trial, a Florida jury hears evidence of aggravating and mitigating circumstances. See Fla. Stat. § 921.141(1) (2010). At the conclusion of this separate sentencing hearing, the jury may recommend a death sentence only if it finds that the State has proved one or more aggravating factors beyond a reasonable doubt and only after weighing the aggravating and mitigating factors. § 921.141(2).
Once the jury has made this decision, the trial court performs what amounts, in practical terms, to a reviewing function. The judge duplicates the steps previously performed by the jury and, while the court can impose a sentence different from that recommended by the jury, the judge must accord the jury's recommendation "great weight." See Lambrix v. Singletary, 520 U.S. 518, 525-526, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (recounting Florida law and procedure). Indeed, if the jury recommends a life sentence, the judge may override that decision only if "the facts suggesting a sentence of death were so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla.1975) (per *626 curiam ). No Florida trial court has overruled a jury's recommendation of a life sentence for more than 15 years.
Under the Florida system, the jury plays a critically important role. Our decision in Ring did not decide whether this procedure violates the Sixth Amendment, and I would not extend Ring to cover the Florida system.
II
Finally, even if there was a constitutional violation in this case, I would hold that the error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although petitioner attacks the Florida system on numerous grounds, the Court's decision is based on a single perceived defect, i.e., that the jury's determination that at least one aggravating factor was proved is not binding on the trial judge. Ante, at 622. The Court makes no pretense that this supposed defect could have prejudiced petitioner, and it seems very clear that it did not.
Attempting to show that he might have been prejudiced by the error, petitioner suggests that the jury might not have found the existence of an aggravating factor had it been instructed that its finding was a prerequisite for the imposition of the death penalty, but this suggestion is hard to credit. The jury was told to consider two aggravating factors: that the murder was committed during the course of a robbery and that it was especially "heinous, atrocious, or cruel." App. 212. The evidence in support of both factors was overwhelming.
The evidence with regard to the first aggravating factor-that the murder occurred during the commission of a robbery-was as follows. The victim, Cynthia Harrison, an assistant manager of a Popeye's restaurant, arrived at work between 7 a.m. and 8:30 a.m. on the date of her death. When other employees entered the store at about 10:30 a.m., they found that she had been stabbed to death and that the restaurant's safe was open and the previous day's receipts were missing. At trial, the issue was whether Hurst committed the murder. There was no suggestion that the murder did not occur during the robbery. Any alternative scenario-for example, that Cynthia Harrison was first murdered by one person for some reason other than robbery and that a second person came upon the scene shortly after the murder and somehow gained access to and emptied the Popeye's safe-is fanciful.
The evidence concerning the second aggravating factor-that the murder was especially "heinous, atrocious, or cruel"-was also overwhelming. Cynthia Harrison was bound, gagged, and stabbed more than 60 times. Her injuries included "facial cuts that went all the way down to the underlying bone," "cuts through the eyelid region" and "the top of her lip," and "a large cut to her neck which almost severed her trachea." Id., at 261. It was estimated that death could have taken as long as 15 minutes to occur. The trial court characterized the manner of her death as follows: "The utter terror and pain that Ms. Harrison likely experienced during the incident is unfathomable. Words are inadequate to describe this death, but the photographs introduced as evidence depict a person bound, rendered helpless, and brutally, savagely, and unmercifully slashed and disfigured. The murder of Ms. Harrison was conscienceless, pitiless, and unnecessarily torturous." Id., at 261-262.
In light of this evidence, it defies belief to suggest that the jury would not have found the existence of either aggravating factor if its finding was binding. More than 17 years have passed since Cynthia Harrison was brutally murdered. In the *627 interest of bringing this protracted litigation to a close, I would rule on the issue of harmless error and would affirm the decision of the Florida Supreme Court.