# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-127

**STATE OF LOUISIANA**

**VERSUS**

**DARNELL J. HUNTLEY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 22045
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**

**Cooks, J., would deny the writ finding no error.**

**Hon. James David Caldwell**
**Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6200**
**COUNSEL FOR PLAINTIFF APPLICANT:**
     **State of Louisiana**

**Michael Harson**
**District Attorney, 15th JDC**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR PLAINTIFF APPLICANT:**
**State of Louisiana**

**Jan Frederick Rowe**
**Attorney At Law**
**124 N. State St., Suite 300**
**Abbeville, LA 70510**
**(337) 898-1049**
**COUNSEL FOR DEFENDANT RESPONDENT:**
**Darnell J. Huntley**

**Laurie A. Hulin**
**15th JDC-Vermilion Parish, ADA**
**P. O. Box 175**
**Abbeville, LA 70511-017**
**(337) 898-4320**
**COUNSEL FOR PLAINTIFF APPLICANT:**
**State of Louisiana**

**Colin Clark**
**Assistant Attorney General**
**P.O. Box 94005**
**Baton Rouge, LA 70804-9095**
**(225) 326-6257**
**COUNSEL FOR PLAINTIFF APPLICANT:**
**State of Louisiana**

**Kevin Valdez**
**Felony Defender**
**P.O. Box 3622**
**Lafayette, LA 70502**
**(337) 232-9345**
**COUNSEL FOR DEFENDANT RESPONDENT:**
**Darnell J. Huntley**

**SAUNDERS, Judge.**

The Defendant, Darnell Huntley, who was a juvenile at the time of the offense, was convicted of first degree murder on September 30, 1982, and sentenced to life imprisonment at hard labor without benefit of probation, parole, suspension, or commutation of sentence.[1]  On appeal, the Defendant's conviction was affirmed, but his sentence was vacated and the matter remanded for resentencing to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.  *State v. Huntley*, 438 So.2d 1188 (La.App. 3 Cir. 1983), *writ denied*, 443 So.2d 1115 (La.1984).

The Defendant filed a motion to correct illegal sentence on July 25, 2012.  Therein, he alleged his automatic sentence of life imprisonment without benefit of probation, parole, or suspension of sentence while under the age of eighteen was a violation of the ruling in *Miller v. Alabama*, 567 U.S. __, 132 S.Ct. 2455 (2012).

In *Miller*, the Supreme Court held that a defendant under the age of eighteen could not automatically be sentenced to life imprisonment without parole.  Instead, the sentencing court must hold a hearing to consider mitigating factors, such as the defendant's youth, before imposing this severe penalty.

A hearing on the motion was held on January 14, 2013, and the trial court found the ruling in *Miller* applied retroactively to the Defendant.  Resentencing of the Defendant was set for March 25, 2013.  The State subsequently noticed its intent to seek supervisory review of the trial court's ruling and requested a stay of the proceedings.  The request for a stay was denied.

---

[1]We note that the minutes of court dated January 24, 1983, state the Defendant was convicted of second degree murder.

The State filed a notice of intent to seek supervisory writs on January 17, 2013. A writ application was received by this court on February 7, 2013. Therein, the State asserts the trial court incorrectly found that *Miller* applied retroactively on collateral review under the primary conduct exception of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). In its writ application, the State asked this court to grant its writ application, stay the scheduled sentencing hearing, and set this matter for oral argument.

This matter was granted to the docket on March 21, 2013. The State and the Defendant have filed additional briefs in this matter. Oral argument were heard on May, 29, 2013.

**DISCUSSION OF THE MERITS**:

In its writ application, the State contended the trial court incorrectly found that *Miller v. Alabama*, 567 U.S. ___, 132 S.Ct. 2455 (2012), applied retroactively on collateral review. We agree.

In S*tate ex rel. Taylor v. Whitley*, 606 So.2d 1292, 1292-93 (La.1992), *cert. denied*, 508 U.S. 962, 113 S.Ct. 2935 (1993), the supreme court held the standards for retroactivity set forth in *Teague v. Lane*, 489 U.S. 288, apply to all cases on collateral review in Louisiana.

> The *Teague* inquiry is conducted in three steps. First, the date on which the defendant's conviction became final is determined. *Lambrix v. Singletary*, 520 U.S. 518, 527, 117 S.Ct. 1517, 1524, 137 L.Ed.2d 771 (1997). Next, the habeas court considers whether " 'a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.' " Ibid. (quoting *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990)) (alterations in *Lambrix* ). If not, then the rule is new. If the rule is determined to be new, the final step in the *Teague* analysis requires the court to determine whether the rule nonetheless falls within one of the two narrow exceptions to the *Teague* doctrine. 520 U.S., at 527, 117 S.Ct., at

1524-1525. The first, limited exception is for new rules "forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). The second, even more circumscribed, exception permits retroactive application of "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Graham* [*v. Collins*, 506 U.S. 461, 113 S.Ct. 892 (1993)], *supra*, at 478, 113 S.Ct., at 903 (quoting *Teague*, *supra*, at 311, 109 S.Ct., at 1075) (internal quotation marks omitted). "Whatever the precise scope of this [second] exception, it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty." *Graham*, *supra*, at 478, 113 S.Ct., at 903 (internal quotation marks omitted).

*O'Dell v. Netherland*, 521 U.S. 151, 156-57, 117 S.Ct. 1969, 1973 (1997).

*Miller* was decided after the Defendant's conviction became final in 1984, and the Defendant sought retroactive application of *Miller* in his collateral attack upon his sentence. The trial court found *Miller* applied retroactively, stating:

> With regard to whether or not this new rule as I described in the combined cases of *Miller v Alabama* and *Kuntrell Jackson v Ray Hobbs*, as to whether or not this rule is substantive or procedural, this is what I understand the criteria to be. A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. However, as I look at it there are really two parts of this: if the rule decriminalizes a class of conduct or prohibits the imposition of punishment on a particular class of persons.

> I will agree that this new rule has not decriminalized a class of conduct. The second part is very significant. The question is: does this new rule prohibit the imposition of a particular kind of punishment on a particular class of people. The Supreme Court for many, many, many, many, many, many years has said death is different. Death is different. In this case, the *Miller* case, the author of the opinion took great pains to write that life for a juvenile is the functional equivalent of death for an adult. It is a more substantive, more onerous penalty for a juvenile to get life than for an adult to get life.

> So thus, if I am to consider the penalty in this case, juvenile life has [sic] the functional equivalent of death for an adult, then it has proscribed, removed a particular kind of penalty being applied to a particular class of offenders. Thus, it's retroactive.

3

**In *Jackson v. Hobbs*, which was consolidated with *Miller*, the defendant was convicted of felony murder and aggravated robbery, which he committed when he was fourteen years old.** Following the Supreme Court's opinion in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005), which invalidated the death penalty for all juvenile offenders under the age of eighteen, Jackson filed a state petition for habeas corpus arguing that a mandatory sentence of life without parole for a fourteen-year-old also violated the Eighth Amendment. While the ruling was on appeal, the Supreme Court issued its opinion in *Graham v. Florida*, __ U.S. __, 130 S.Ct. 2011 (2010), in which it found that a sentence of life without parole imposed upon juvenile non-homicide offenders violated the Eighth Amendment. Thereafter, the Supreme Court granted relief to Jackson on collateral review.

In *Teague*, 489 U.S. at 300, the Supreme Court stated: "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." In *Penry v. Lynaugh*, 492 U.S. 302, 313, 109 S.Ct. 2934, 2944 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002), the Supreme Court subsequently stated: "Under *Teague*, new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions [specified in *Teague*]." However, in *Tyler*, 533 U.S. at 663 (footnote omitted), which involved the filing of a second habeas corpus application under the

4

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Supreme

Court stated:[2]

> The only way the Supreme Court can, by itself, "lay out and construct" a rule's retroactive effect, or "cause" that effect "to exist, occur, or appear," is through a holding. The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.[4] We thus conclude that a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive.
>
> . . . .
>
> We further note that our interpretation is necessary for the proper implementation of the collateral review structure created by AEDPA.

_____

[4]Similarly, the Supreme Court does not make a rule retroactive through dictum, which is not binding. Cf. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, (1996) (contrasting dictum with holdings, which include the final disposition of a case as well as the preceding determinations " *necessary* to that result" (emphasis added)).

The Supreme Court later noted that multiple cases could make a new rule

retroactive, but only if the holdings in those cases necessarily dictated retroactivity

of the new rule. *Id.* at 666.

We find that the case at bar is distinguishable from *Tyler*. The Defendant in

the case at bar has not filed a habeas claim governed by the AEDPA.

_____

[2]AEDPA § 2244(b)(2)(A) covers claims that

"rel[y] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." This provision establishes three prerequisites to obtaining relief in a second or successive petition: First, the rule on which the claim relies must be a "new rule" of constitutional law; second, the rule must have been "made retroactive to cases on collateral review by the Supreme Court"; and third, the claim must have been "previously unavailable."

*Tyler*, 533 U.S. at 662.

Federal Appellate Courts

In *Craig v. Cain*, __ F.3d __ (5th Cir. 2013), the United States Fifth Circuit held that *Miller* established a new rule.[3] However, that new rule did not apply retroactively, as the *Miller* decision did not categorically bar all sentences of life imprisonment for juveniles. Additionally, the decision did not qualify as a watershed rule of criminal procedure, as it was an outgrowth of the Supreme Court's prior decisions that relate to individualized sentencing determinations.

In *People v. Carp*, 307,758 (Mich.App. 11/15/12), 828 N.W.2d 685, a Michigan appellate court held that *Miller* should not be applied retroactively to cases already final on appeal when the *Miller* decision was rendered. The court analyzed the retroactivity question under *Teague* and the Michigan state standard and found that *Miller* dealt exclusively with sentencing; therefore, it was procedural and not substantive in nature and did not comprise a watershed rule.

The Michigan appellate court also stated the mere fact that the Supreme Court remanded Jackson's case for resentencing did not constitute a ruling or determination on retroactivity. The court then set forth the following:

> The only way the Supreme Court can, by itself, "lay out and construct" a rule's retroactive effect, or "cause" that effect "to exist, occur, or appear," is through a holding. The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court. We thus conclude that a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive.[]

[*Tyler v. Cain*, 533 U.S. 656, 663, 121 S.Ct. 2478 (2001) (footnotes omitted).]

---

[3] This case can be found at the following citation: 2013 WL 69128.

In addition:

> [T]he nonretroactivity principle *prevents* a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final. A threshold question in every habeas case, therefore, is whether the court is obligated to apply the *Teague* rule to the defendant's claim. We have recognized that the nonretroactivity principle "is not 'jurisdictional' in the sense that [federal courts] ... must raise and decide the issue sua sponte." Thus, a federal court may, but need not, decline to apply *Teague* if the State does not argue it. But if the State does argue that the defendant seeks the benefit of a new rule of constitutional law, the court must apply *Teague* before considering the merits of the claim.[]

[*Caspari v. Bohlen*, 510 U.S. 383 at 389, 114 S.Ct. 948 (1994) (citations omitted, emphasis in original).]

This is consistent with the Court's determination in *Schiro v. Farley*, which provides:

> Nevertheless, the State failed to argue *Teague* in its brief in opposition to the petition for a writ of certiorari. In deciding whether to grant certiorari in a particular case, we rely heavily on the submissions of the parties at the petition stage. If, as in this case, a legal issue appears to warrant review, we grant certiorari in the expectation of being able to decide that issue. Since a State can waive the *Teague* bar by not raising it, and since the propriety of reaching the merits of a dispute is an important consideration in deciding whether or not to grant certiorari, the State's omission of any *Teague* defense at the petition stage is significant. Although we undoubtedly have the discretion to reach the State's Teague argument, we will not do so in these circumstances.[]

[*Schiro v. Farley*, 510 U.S. 222, 229, 114 S.Ct. 783 (1994) (citations omitted).]

In *Jackson*, because the State did not raise the issue of retroactivity, the necessary predicate for the Court to resolve the question of retroactivity was waived. Hence, merely because Jackson was before the Court on collateral review is not dispositive on the issue of retroactivity.

*Carp*, 828 N.W.2d 685, 712-13.

In *People v. Morfin*, 1-10-3568 (Ill.App. 1 Dist. 11/30/12), 981 N.E.2d 1010, the Illinois appellate court held that *Miller* created a new substantive rule and applied retroactively, as *Miller* required Illinois courts to hold a sentencing hearing for every minor convicted of first degree murder at which a sentence other than natural life imprisonment must be available for consideration. The appellate court noted that its decision was reinforced by the fact that, in *Miller*, Jackson was before the Supreme Court on collateral review and received the same relief that Miller did. The appellate court stated: "the relief granted to Jackson in *Miller* tends to indicate that *Miller* should apply retroactively on collateral review."

In *People v. Williams*, 1-11-1145, 1-11-2251 (Ill.App. 1 Dist. 12/12/12), 982 N.E.2d 181, the Illinois appellate court held the decision in *Miller* constituted a substantial change in the law and was a watershed rule of criminal procedure. The appellate court further stated:

> It is instructive that the *Miller* companion case, *Jackson v. Hobbs*, arising on collateral review, involved a life-without-parole-sentence heretofore final. Notwithstanding its finality, the Supreme Court of the United States in effect retroactively applied *Miller* and vacated Jackson's sentence. "[O]nce a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Teague*, 489 U.S. at 300, 109 S.Ct. 1060. The *Miller* case held under the eighth amendment that it is cruel and unusual punishment to impose a mandatory life sentence without parole to a special class—juveniles. It would also be cruel and unusual to apply that principle only to new cases. We therefore hold that the Court's holding in *Miller* should be retroactively applied.

*Id.* at 197.

Louisiana Supreme Court

In *State v. Simmons*, 11-1810, pp. 1-2 (La. 10/12/12), 99 So.3d 28, 28, our supreme court stated the following:

8

Relator is presently serving a sentence of life imprisonment at hard labor without possibility of parole for a second degree murder committed in 1995 when he was 17 years old. The sentence was mandated by the penalty provision of the statute establishing the offense. La.R.S. 14:30.1(B). In 2011, relator filed a motion to correct an illegal sentence in which he contended that a sentence of life imprisonment without parole for a juvenile offender is no longer constitutionally permissible under developing legal standards, and in particular in light of *Graham v. Florida*, 560 U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (Eight Amendment precludes sentencing juvenile offenders to life imprisonment without parole for non-homicide crimes). The district court denied relief. While review of that judgment was pending, the United States Supreme Court determined that mandatory life imprisonment without parole for those offenders under the age of 18 years at the time they committed a homicide offense violates the Eighth Amendment prohibition of "cruel and unusual punishments." *Miller v. Alabama*, 567 U.S. ——, ——, 132 S.Ct. 2455, 2466, 183 L.Ed.2d 407 (2012). Unlike the case in *Graham*, the *Miller* court did not prohibit life imprisonment without parole for juveniles, but instead required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible penalty for juveniles who have committed a homicide offense. Therefore, we grant to remand to the district court for reconsideration after conducting a sentencing hearing in accord with the principles enunciated in *Miller* and stating the reasons for reconsideration and sentencing on the record.

In *State ex rel. Landry v. State*, 11-796 (La. 1/18/13), 106 So.3d 106, our

supreme court stated:

> Relator is presently serving a sentence of life imprisonment without possibility of parole for a second degree murder committed in 1976 when he was 17 years old. The sentence was mandated by the penalty provision of the statute establishing the offense. R.S. 14:30.1. In 2011, relator filed a motion to correct an illegal sentence in which he contended that a sentence of life imprisonment without parole for a juvenile offender is no longer constitutionally permissible under developing legal standards, and in particular in light of *Graham v. Florida*, 560 U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (Eighth Amendment precludes sentencing juvenile offenders to life imprisonment without parole for non-homicide crimes). The district court (Johnson, J) denied relief. While review of that judgment was pending, the United States Supreme Court determined that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments". *Miller v. Alabama*, No. 10–9646 slip op., 567 U.S. ——, 130 S.Ct. 2011, ——, 176 L.Ed.2d 825 (June 25, 2012).

9

Unlike the case in *Graham*, the *Miller* court did not establish a categorical prohibition against life without parole for juveniles but instead required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possibly penalty for juveniles. Therefore, we grant to remand to the district court to reconsider the sentence after conducting a new sentencing hearing in accordance with the principles enunciated in *Miller v. Alabama*.

CLARK, J. dissenting.
I would grant the writ for consideration for a full analysis under *Teague v. Lane*, 489 U.S. 288 (1989).

The State alleges the *Teague* defense was not argued before our supreme court in *Simmons*, 99 So.3d 28, or *Landry*, 106 So.3d 106, and was not raised by the supreme court *sua sponte*. Thus, our supreme court has said nothing on the issue of retroactivity.

The Defendant contends that our supreme court applied *Miller* retroactively in *Simmons*, 99 So.3d 28, and *Landry*, 106 So.3d 106. He asserts that in *Simmons*, "[t]he Louisiana Supreme Court once again held that because *Miller* ruled that mandatory life imprisonment for juveniles was unconstitutional, that they would apply its ruling retroactively."

We find that our supreme court has not reached the issue squarely before us in this case. Therefore, we must conduct a *Teague* analysis as a matter of first impression in the Louisiana courts. Therefore, the parties' arguments regarding the *Teague* analysis and cases from other jurisdictions that have addressed this issue must be considered.

Arguments of the Parties

The State asserts that in *Craig*, the Fifth Circuit also found that *Miller* was not retroactive under the primary conduct exception to *Teague*, reasoning that the exception apparently only applies when a new rule fully removes a specific

punishment from the list available to be constitutionally imposed to deter a class of defendants, i.e., not when a ruling deals with the considerations given in imposing a sentence. The State asserts that *Craig* is the only Louisiana case that deals with the retroactivity of *Miller*.

The State asserts that, as in *Carp*, 828 N.W.2d 685, it is not beyond the power of the law making authority to sentence a juvenile to life without benefit of parole; thus, it follows that the Supreme Court has not made the new rule set forth in *Miller* retroactive to cases on collateral review under the primary conduct exception.

Additionally, the State cites *In re Morgan*, 713 F.3d 1365 (11th Cir. 2013). In *Morgan*, the Eleventh Circuit declined to apply the rule set forth in *Miller* retroactively, finding *Miller* did not prohibit a certain category of punishment for a class of defendants because of their status or offense and was procedural in nature because it regulated only the manner of determining a defendant's culpability.

The Defendant asserts that the rule in *Miller* requires new procedural considerations before sentencing and such procedural requirements amount to a watershed rule under *Teague*. The Defendant also proposes that the Supreme Court in *Miller* noted the unreliability of mandatory life without parole sentences for juveniles when it stated such sentences posed too great a risk of disproportionate punishment. The Defendant notes that in *Williams*, 982 N.E.2d 181, the Illinois appellate court held that *Miller* was a watershed rule of criminal procedure.

Additionally, the Defendant asserts that *Morgan*, 713 F.3d 1365, *Craig*, (2013 WL 69128), and *Carp*, 828 N.W.2d 685, have no precedential value, as states are free to give broader retroactive effect to new rules of criminal procedure

11

than is required by federal law. The Defendant asserts the procedural posture in *Craig*, (2013 WL 69128), was starkly different from the case at bar, as the defendant in *Craig* was before the court on federal habeas review under 28 USC §2254. The Defendant alleges the issue of retroactivity was considered *sua sponte* in that case. Further, the opinion is unpublished, and is, therefore, not controlling precedent pursuant to 5th Cir. R. 47.5.4, which provides that unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel, or law of the case.

The Defendant also argues that *Morgan*, 713 F.3d 1365, is distinguishable because it was a federal proceeding in which the defendant sought to have his sentence amended pursuant to federal law, and this court is not bound by the Eleventh Circuit's ruling.

Finally, the Defendant further argues that *Carp*, 828 N.W.2d 685, is distinguishable because Michigan applies a different statutory scheme to determine retroactivity. We note that the Michigan court of appeal analyzed the retroactivity question using the *Teague* analysis and the Michigan state standard. Thus, this argument is not accurate.

After thoroughly reviewing the jurisprudence on both sides of this matter, we agree with the reasoning put forth by our Fifth Circuit in *Craig v. Cain*. The *Miller* decision did not bar all sentences of life imprisonment for juveniles. Rather, it merely added a procedural safeguard that must be followed in order to impose that particular punishment. Additionally, the decision did not qualify as a watershed rule of criminal procedure, as it was an outgrowth of the Supreme Court's prior decisions that relate to individualized sentencing determinations.

12

Accordingly, we find that it is a procedural rule that does not apply retroactively under *Teague*.

## DECREE:

The trial court erred in finding *Miller v. Alabama*, 567 U.S. __, 132 S.Ct. 2455, (2012), retroactively applicable to this matter. *See Craig v. Cain*, __ F.3d __ (5ᵗʰ Cir. 2013) [4]; *People v. Carp*, 307,758 (Mich.App. 11/15/12), 828 N.W.2d 685.

**WRIT GRANTED AND MADE PEREMPTORY.**

---

[4] This case can be found at the following citation: 2013 WL 69128.