People v Banks (2024 NY Slip Op 24241)

[*1]

People v Banks

2024 NY Slip Op 24241

Decided on September 6, 2024

Supreme Court, New York County

Mandelbaum, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 6, 2024
Supreme Court, New York County

The People of the State of New York

against
Terence Banks, Defendant.

Ind. No. 3212/2019

For the Defendant: Susan Calvello, Esq.
For the People: Alvin L. Bragg, Jr., District Attorney, New York County (Charlotte Armour, Bethany Spiro and Dana Poole of counsel)

Robert M. Mandelbaum, J.

May a criminal trial jury be impaneled for the sole purpose of determining whether a defendant was previously incarcerated during certain time periods?
I.
On July 27, 2019, in a secluded area of Randalls Island, defendant forcibly and sexually assaulted a 15-year-old girl. The following month, in a nearby spot, he vaginally, orally, and anally raped an unrelated adult woman by forcible compulsion. For these crimes, defendant stands convicted by a jury of four counts of predatory sexual assault, two counts of sexual abuse in the first degree, and endangering the welfare of a child.
These are not defendant's first violent felony convictions. Rather, on August 1, 1984, he was convicted in Kings County of robbery in the first degree; sentence was imposed that same day. And on February 4, 1991, he was convicted in New York County of rape in the first degree,[FN1]
for which he was sentenced on March 21, 1991.
Based on these two predicate violent felony convictions, the People filed a statement (see CPL 400.15 [2]; 400.16 [2]) contending that defendant is a persistent violent felony offender (see Penal Law § 70.08) subject to enhanced sentencing.[FN2]

Following defendant's May 14, 2024, conviction, but before sentencing, the United States Supreme Court, on June 21, 2024, decided Erlinger v United States (602 US &mdash, 144 S Ct 1840 [2024]). Erlinger is the latest in a string of Supreme Court decisions analyzing the extent to which, under the Sixth Amendment (see US Const Amend VI), facts necessary for sentence enhancement must be found by a jury beyond a reasonable doubt. Beginning with Apprendi v United States (530 US 466, 490 [2000]), the Court has regularly held that, as a constitutional matter, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," in order to comply with due process (see US Const Amend V) and the Sixth Amendment right to a jury trial.[FN3]

A.
The Court made clear in Apprendi that sentencing courts remain free to exercise discretion — "taking into consideration various factors relating both to offense and offender"  in imposing sentence "within the range" of sentences prescribed by the statute defining an offense (530 US at 481). But a state may not "remove[] the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone" (530 US at 482-483). Rather, only a jury may find "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" (id. at 490 [citation omitted]).
Following Apprendi, state and lower federal courts have repeatedly wrestled with whether particular determinations constitute the mere exercise of traditional sentencing discretion within the range of statutorily prescribed sentences or, instead, findings of "facts" that increase the penalty for a crime beyond the statutory maximum. The Supreme Court, however, has consistently narrowed the circumstances in which judicial findings may be used to enhance sentencing, all the while maintaining an exception for the "fact of a prior conviction," as established in Almendarez-Torres v United States (523 US 224 [1998]).
First, in Ring v Arizona (536 US 584 [2002]), the Court overruled Walton v Arizona (497 US 639 [1990]), which had allowed a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty, for which the defendant was initially "eligible" because of his conviction for first-degree murder. In Ring, the Court extended the rule of Apprendi to capital cases, holding that aggravating factors required for imposition of the death penalty must be found by the jury beyond a reasonable doubt. Mindful of Apprendi's teaching that sentencing courts may exercise discretion in imposing sentence within the range of sentences prescribed by the statute defining an offense, Arizona had contended that under its capital statute, the jury makes all of the findings necessary to expose the defendant to a death sentence in that a defendant convicted of first-degree murder has been convicted under a statute which specifies "death or life imprisonment" as the only sentencing options; the defendant had therefore, Arizona argued, been sentenced within the range of punishment authorized by the jury verdict.
The Ring Court rejected this contention, concluding that a "defendant convicted of first-degree murder in Arizona cannot receive a death sentence unless a judge makes the factual determination that a statutory aggravating factor exists. Without that critical finding, the maximum sentence to which the defendant is exposed is life imprisonment, and not the death penalty" (536 US at 603 [citation omitted]). The Court thus concluded that the Arizona first-degree murder statute authorized a maximum penalty of death "only in a formal sense," [*2]inasmuch as it cross-referenced the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty (id. at 604 [citation omitted]. The Court emphasized that "the relevant inquiry is one not of form, but of effect" (id. [citation omitted]) — "does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (Apprendi, 530 US at 494). With Ring, the Court made clear that all facts (other than recidivism) that must be found in order to increase the sentence, regardless of whether they relate to the defendant's threshold eligibility for the increased sentence, must be found by a jury beyond a reasonable doubt.
Then, in Blakely v Washington (542 US 296 [2004]), in striking Washington's state sentencing guidelines under Apprendi,[FN4]
the Court reaffirmed this point. "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings" (542 US at 303-304). That the grounds for enhancement enumerated in the statutory regime "are illustrative rather than exhaustive . . . is immaterial. Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact" (id. at 305; see also Cunningham v California, 549 US 270 [2007] [California's determinate sentencing law, authorizing judge to find factual "circumstances in aggravation of the crime" in order to expose defendant to elevated "upper term" sentence, violated right to trial by jury]; Alleyne v United States, 570 US 99 [2013] [because whether defendant had brandished firearm in connection with crime of violence would elevate mandatory minimum term for firearms offense, finding could not constitutionally be made by judge; any fact that increases penalty for crime, including by increasing mandatory minimum sentence, is "element" of crime, not "sentencing factor," and must be submitted to jury]; Hurst v Florida, 577 US 92 [2016] [Florida's capital sentencing scheme, under which advisory jury makes recommendation to judge, and judge makes critical findings needed for imposition of death sentence, violates Sixth Amendment right to jury trial]).
"Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone does not authorize the sentence" (Blakely, 542 US at 305 n 8). Thus, if the facts at issue are essential to imposition of the level of punishment that the defendant receives, Apprendi requires that they be found by a unanimous jury beyond a reasonable doubt, "whether the statute calls them elements of the offense, sentencing factors, or Mary Jane" (Ring, 536 US at 610 [Scalia, J., concurring]; see also Erlinger, 144 S Ct at 1851 ["Virtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)" (internal quotation marks and citation omitted)]; id. at 1850 [unanimous jury must find "every fact essential to an offender's punishment"]; cf. Ramos v Louisiana, 590 US 83, 93 [2020] [Sixth Amendment requirement of unanimous jury]).
B.
The New York Court of Appeals has on multiple occasions addressed the impact of Apprendi and its progeny on our recidivist sentencing laws, albeit primarily in the context of [*3]persistent felony offenders [FN5]
(see e.g. People v Prindle, 29 NY3d 463 [2017]; People v Quinones, 12 NY3d 116 [2009]; People v Rivera, 5 NY3d 61 [2005]; People v Rosen, 96 NY2d 329 [2001]). Apprendi's impact on the persistent violent felony offender statute has been less discussed, because Almendarez-Torres is clear that the "fact of a prior conviction" is an exception to the Apprendi rule and need not be found by a jury beyond a reasonable doubt in order for enhanced sentencing to be imposed. Here, however, more is in question than merely the "fact of a prior conviction."
Under Penal Law § 70.08 (1) (a), a persistent violent felony offender is a person who stands convicted either of a violent felony offense (see Penal Law § 70.02) or of predatory sexual assault or predatory sexual assault against a child, after having previously been subjected to two or more "predicate violent felony convictions." To constitute a predicate violent felony conviction, sentence on the conviction must, among other criteria, "have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted" (Penal Law § 70.04 [1] [b] [iv]). In calculating this ten-year period, "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded," and such ten-year period shall be extended by a period or periods equal to the time served under such incarceration (Penal Law § 70.04 [1] [b] [v]).
When it appears that a defendant who stands convicted of a violent felony offense has previously been subjected to two or more predicate violent felony convictions and may be a persistent violent felony offender, the People must before sentence is imposed file a statement setting forth the date and place of each alleged predicate violent felony conviction (see CPL 400.16 [1], [2]; 400.15 [2]). And where the tolling provisions of Penal Law § 70.04 (1) (b) (v) apply, "such statement also shall set forth the date of commencement and the date of termination as well as the place of imprisonment for each period of incarceration to be used for tolling of the ten year limitation" (CPL 400.15 [2]).
Here, the People filed a statement alleging that defendant's 1984 and 1991 convictions satisfy the criteria for predicate violent felony convictions because the requisite ten-year period was "extended by defendant's incarceration at New York State Department of Correction [sic] from August 10, 1984 to October 13, 1988, at New York City Department of Correction from August 24, 1990 to October 24, 1991, at New York State Department of Correction [sic] from October 24, 1991 to February 14, 2012, [and] at Du[t]chess County Jail from March 8, 2017 to July 7, 2017."
C.
In Erlinger, the Court applied its Apprendi jurisprudence to the question whether a judicial determination that past offenses had been committed on "different occasions," necessary for enhanced sentencing under the federal Armed Career Criminal Act (ACCA), violated the Sixth Amendment. While reiterating that, pursuant to Almendarez-Torres, the "fact of a prior conviction" need not be submitted to a jury, the Erlinger Court rejected the contention that this "different occasions" inquiry was inherent in the Almendarez-Torres exception. Instead, the Court emphasized that under this "narrow" exception, "a judge may do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of" (Erlinger, 144 S Ct at 1853-1854 [citations omitted]). In concluding that the enhanced sentencing was unconstitutional, the Court explained that "[t]o determine whether Mr. Erlinger's prior convictions triggered ACCA's enhanced penalties, the [trial] court had to do more than identify his previous convictions and the legal elements required to sustain them. It had to find that those offenses occurred on at least three separate occasions. And, in doing so, the court [*4]did more than Almendarez-Torres allows" (144 S Ct at 1854).
To be sure, Erlinger made clear that the authority granted by Almendarez-Torres for a judge to find "what crime, with what elements, the defendant was convicted of" (Mathis v United States, 579 US 500, 512 [2016]) necessarily encompasses a judicial determination of "the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time" (Erlinger, 144 S Ct at 1854; see also People v Leon, 10 NY3d 122, 126 [2008] ["a sentencing judge's ability to determine whether a defendant has a prior conviction extends to the 'who, what, when and where' of a prior conviction" (internal quotation marks and citation omitted)]). "None of that, however, means that a court may use . . . any . . . materials for any other purpose. To ensure compliance with the Fifth and Sixth Amendments, a sentencing judge may use . . . information he gleans . . . for the limited function of determining the fact of a prior conviction and the then-existing elements of that offense. No more is allowed" (Erlinger, 144 S Ct at 1854 [internal quotation marks and citations omitted]). Indeed, the Court in Erlinger took repeated pains to emphasize that it meant what it said: A judge may "undertake the job of finding the fact of a prior conviction  and that job alone" (id. at 1853). "We have reiterated this limit on the scope of Almendarez-Torres 'over and over,' to the point of 'downright tedium'" (id. at 1854 [citation omitted]).[FN6]

In order to sentence defendant as a persistent violent felony offender, the court must determine not only the fact of his two prior convictions, including the jurisdictions in which the crimes occurred and their dates, but also — since, on their face, sentences on these 1984 and 1991 convictions were imposed "more than ten years before commission of the felony of which the defendant presently stands convicted" (Penal Law § 70.04 [1] [b] [iv])  that defendant was incarcerated on the particular dates alleged by the People, so as to extend the ten-year period "by a period or periods equal to the time served under such incarceration" (Penal Law § 70.04 [1] [b] [v]). As the People concede, these dates of incarceration are facts, and the inquiry as to the accuracy of their allegation involves factfinding, which under Erlinger may not constitutionally be undertaken by the court. Instead, the facts of his prior incarceration must be found by a jury beyond a reasonable doubt before defendant may be subjected to enhanced recidivist sentencing.[FN7]

Before Erlinger, in the rare event that a defendant colorably challenged the dates of his incarceration, such a determination would typically have been made upon review of records kept by the appropriate correction department or correctional facility. But these are precisely the types of "other materials" that Erlinger forbids a court to "use . . . for any other purpose . . . [than] the limited function of determining the fact of a prior conviction and the then-existing elements of that offense" (144 S Ct at 1854). Under Erlinger, such review must be undertaken by a jury.
Indeed, Erlinger was explicit that even when it seems obvious from incontrovertible documentary proof that the relevant facts are established, a jury trial remains required. "We do not question . . . that in many cases the occasions inquiry will be 'straightforward.' Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question he committed them on separate occasions. But none of that means a judge rather than a jury should make the call. There is no efficiency exception to the Fifth and Sixth Amendments" (144 S Ct at 1856 [internal quotation marks and citation omitted]).
Simply put, Erlinger holds that any facts (other than the fact of a prior conviction) offered to enhance sentencing beyond the statutory maximum must be found by a jury beyond a reasonable doubt  not complex facts, not non-obvious facts, but any facts. The fact of incarceration on certain dates is a fact, irrespective of its complexity or self-evidence. Accordingly, defendant may not be sentenced as a persistent violent felony offender based on a judicial finding that his ten-year period was extended by the periods of incarceration alleged in the People's filed statement.
II.
A.
Although the People concede that after Erlinger, the court may not constitutionally sentence defendant as a persistent violent felony offender based on judicial findings as to the dates of his prior incarceration (and whether those dates extend the statutory ten-year period to render him eligible for recidivist sentencing), they contend that defendant may nevertheless be so sentenced simply by proceeding as Erlinger contemplates  with a jury trial. The People's suggestion, however, is far from simple.
The People maintain that this court is empowered to impanel a new criminal jury for the sole purpose of deciding whether defendant was incarcerated during the periods they allege. The New York statutory scheme governing procedure for determining persistent violent felony offender status, however, expressly forbids this approach. When, as here, the defendant controverts an allegation in the People's filed statement necessary to support a finding that he has been subjected to a predicate violent felony conviction, the court must conduct a hearing (see CPL 400.16 [2]; 400.15 [3], [5]). Under the statute, that hearing "must be before the court without jury" (CPL 400.15 [7] [a]). That being so, when contested facts beyond the fact of a prior conviction  here, facts pertaining to tolling  are at issue and must be found, CPL 400.15 (7) (a) is, under Erlinger and the Sixth Amendment, plainly unconstitutional as applied.[FN8]

As authority for their theory that this court may nevertheless, despite the express (albeit [*5]unconstitutional) statutory bar, conduct a jury trial to determine the question of tolling, the People cite Judiciary Law § 2-b (3), which provides that a court of record has power "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it." The People ask the court to use this "inherent authority" to devise and hold a jury trial in the context of this pending criminal action.
But Judiciary Law § 2-b (3) is not limitless and does not convert judges to kings  or to legislators (see People v Ricardo B., 73 NY2d 228, 232 [1989] ["The power to regulate practice and procedure lies principally with the Legislature, not the courts" (citations omitted)]). New forms of proceedings devised and upheld under the Judiciary Law have generally involved extraordinary circumstances arising in a single case, not a whole category of cases rendered procedurally unconstitutional by the United States Supreme Court in one fell swoop (see Ricardo B., 73 NY2d at 235 [authorizing novel procedure, as permitted under Judiciary Law § 2-b (3), but directing that it was "to be used sparingly"]; see also People v Lopez, — Misc 3d &mdash, 2024 NY Slip Op 24207, *10 [Sup Ct, NY County 2024] ["The doctrine of inherent authority allows courts in exceptional circumstances to 'fill in the blanks' of a court's statutory authority in accordance with clear legislative goals to bring justice in rare individual cases. It does not authorize trial courts to create new rules of general applicability"]).[FN9]

Although inherent authority "is, by its very nature, not susceptible to precise definition" (Gabrelian v Gabrelian, 108 AD2d 445, 451 [2d Dept 1985] [citation omitted]), it may be properly invoked only so long as the innovative procedures devised by the court are "consistent with constitutional, statutory, and decisional law" (People v Wrotten, 14 NY3d 33, 37 [2009] [permitting live, two-way televised trial testimony of adult complainant found to be elderly, infirm, and physically incapable of appearing in court; "no specific statutory authority evincing legislative policy proscribing televised testimony" (id. at 38)]; see also Ricardo B., 73 NY2d at 232 [permitting joint trial of severed codefendants before separate juries; "nothing in the Constitutions, the statutes or our decisions interpreting them . . . which expressly authorizes or prohibits the use of multiple juries in New York State"; courts have "latitude to adopt procedures consistent with general practice as provided by statute"]).
Here, of course, the proposed innovation is not "consistent with constitutional, statutory, and decisional law" (Wrotten, 14 NY3d at 37), nor is there an absence of "specific statutory authority evincing legislative policy proscribing" a jury from making the persistent violent felony offender determination (id. at 38). To the contrary, CPL 400.15 (7) (a) expressly mandates that any hearing on this question "must be before the court without jury" (cf. Ricardo B., 73 NY2d at 232 [upholding new form of proceeding where there was "nothing in the Constitutions, the statutes or our decisions . . . which expressly . . . prohibits" the innovative procedure]). Thus, and troublingly, "[i]mplementing Judiciary Law § 2-b (3) in the manner advocated by the People would be contrary to, rather than consistent with, the existing statutory . . . law on this issue" (People v Singh, 90 AD3d 1079, 1080 [2d Dept 2011]).
B.
Of course, to the extent that the contrary statute has been rendered unconstitutional under Erlinger, the statutory prohibition is perhaps the least of our concerns. More fundamentally perturbing is that the People's proposal  just go ahead and hold a jury trial — leaves countless questions unanswered, calling for the court to make a slew of policy decisions properly left to the Legislature. How many jurors should be seated (compare CPL 270.05 [1] [a jury in a trial of an [*6]indictment in a superior court consists of twelve jurors] with CPL 360.10 [1] [a trial jury in a local criminal court consists of six jurors])? How many alternates? How many peremptory challenges should each side get? (The number of peremptory challenges is generally determined by the classification of the highest crime charged. How should that principle be applied when the sole question before the jury does not involve a "crime" defined or classified by statute?)
On what subjects may the prospective jurors be properly examined? In the instant case, any trial to be had on the question of defendant's prior incarceration periods would necessarily have to be commenced before a new jury, since the jury that convicted him has already been discharged. In future cases, however, it might well be that the punishment phase would take place before the same jury as heard the guilt phase. In such a bifurcated proceeding, should the prospective jurors be told before they are chosen that if there is a guilty verdict, they will have to remain for a second (albeit shorter) trial? Would informing them they will be on the hook for extended jury service only if they convict risk coercing them into acquittal? Should they be advised up front that the second phase of the trial will involve questions pertaining to sentencing (which they are otherwise repeatedly instructed to ignore)? Should they be specifically told that they will have to decide whether the defendant was incarcerated on certain dates, in order that they can be fully examined on their ability to be fair in reaching that particular decision? Or, inasmuch as the prospective jurors, if made aware that they must determine when the defendant was previously incarcerated, will necessarily learn information that in the normal course would be scrupulously kept from them to avoid prejudicing the defendant  that he has been previously convicted of crime  should this type of examination during jury selection be barred?
What instructions should be given to the jury before they begin their deliberations? What terms should be defined? What form should the verdict take? By its plain terms, the Criminal Procedure Law authorizes verdicts of only either guilty or not guilty (or, where appropriate, not responsible by reason of mental disease or defect [see CPL 330.20]) (see CPL 300.10 [4]). Here, by contrast, would the verdict to be rendered consist of a question (cf. CPLR 4111 [a] [b] [authorizing special verdicts in addition to general verdicts]; but see CPLR 101 [CPLR "shall govern the procedure in civil judicial proceedings" (emphasis added)]; CPL 1.10 [1] [a] [the provisions of the CPL "apply exclusively to . . . (a)ll criminal actions and proceedings"]; 310.50 [4] [authorizing special verdict but only in prosecution involving charge of enterprise corruption])? And what question? "Do you find beyond a reasonable doubt that defendant was incarcerated at the Dutchess County Jail from March 8, 2017, to July 7, 2017?" Or a more open-ended one: "When (if at all?) was defendant incarcerated?" Or perhaps: "Did defendant's prior incarceration extend the time between the commission of his previous felony and commission of the present felony to the extent that, excluding the extended period, sentence on the prior felony was imposed not more than ten years before commission of the present felony?"
Defendant stands convicted of felony charges contained in a (legally sufficient) indictment filed in Supreme Court. Accordingly, his sentencing must, of course, take place in Supreme Court, as well. But, absent waiver, "[n]o person shall be held to answer for [an] . . . infamous crime . . . unless on indictment of a grand jury" (NY Const, art 1, § 6). Here, where defendant's sentencing proceeding can no longer take place before the same jury that convicted him (which was long ago discharged), an entirely new jury would have to be impaneled. In that circumstance, must defendant first be indicted for the "crime" of having been incarcerated on certain dates in order that he may be tried in Supreme Court on that question? And since a grand jury may indict a person only for one or more offenses, at least one of which is a crime (see CPL 190.60 [1]; 1.20 [3]; see also Penal Law § 10.00 [1] [defining "offense"]), can he be? Is that indictment subject to motion practice, including a determination that it is legally sufficient?
And what if different trial judges reach different conclusions on these many questions? What if one sentencing trial judge decides that each party should get ten peremptory challenges (see CPL 270.25 [2] [c] [ten peremptory challenges for the regular jurors "in all other cases" than those where the highest crime charged is a class C felony or higher]) and another decides they should get twenty (perhaps on the theory that this was the authorized number in the underlying [*7]trial in which defendant was charged with the class A felonies for which he now faces sentence [see CPL 270.25 (2) (a)]), or forty (because the judge "feels" that this is more fair and, after all, the judge is making up the whole thing anyway [see Ricardo B., 73 NY2d at 233 (when inherent authority is properly invoked under Judiciary Law § 2-b [3], "[t]he courts may adopt new procedures which are fair and which facilitate the performance of their responsibilities")]). This is not judging; this is legislating based on nothing but personal preference. And when these three sentencing proceedings are reviewed by the Appellate Division, which will be upheld and which reversed? On what standard?
III.
A.
Erlinger has created a problem that needs a solution, and fast. But only the Legislature is empowered to make the many policy choices necessary to fix the statute  not individual judges with individual views about what is best.
After all, there are many available options, consistent with Erlinger and the Sixth Amendment, to render the persistent violent felony offender statute constitutional. First, of course, the Legislature could decide to enact a system of jury trials on the discrete question of tolling periods and, in so doing, answer the myriad questions posed above (and many others). These trials could be stand-alone proceedings distinct from the trials of the underlying criminal charges, or bifurcated proceedings before either the same or a different jury (see Apprendi, 530 US at 521 n 10 [Thomas, J., concurring]; cf. CPL 400.27 [enacting a detailed scheme for holding a bifurcated sentencing proceeding as part of the unconstitutional former death penalty statute; proceeding was to be conducted before the court sitting "with the jury that found the defendant guilty"; court could "discharge the jury and impanel another jury only in extraordinary circumstances and upon a showing of good cause" (CPL 400.27 [2])]).
Or the Legislature might decide to enact a graduated set of criminal statutes defining the elements of the offenses according to recidivist history and thereby avoid the need to create any new or bifurcated system of jury trials at all. For example, the new crime of predatory sexual assault in the first degree (or "predatory sexual assault as a persistent violent felony offender") could be defined as committing predatory sexual assault after having previously been subjected to two or more predicate violent felony convictions within the last ten years (subject to tolling), while predatory sexual assault in the second degree (or "as a second violent felony offender") could be defined as committing the crime after having previously been subjected to only one such conviction. And the third-degree crime could be defined as predatory sexual assault committed as a first felony offender. The sentencing range for each of these crimes would then be set as that currently available for defendants in each of those recidivist categories, and a trial of these charges would be conducted like any other.
Under current law, when certain facts that are defined as elements of a crime are deemed too prejudicial to be admitted before a trial jury assessing guilt — such as the fact of a prior conviction (see e.g. Penal Law § 265.02 [1] [defining criminal possession of a weapon in the third degree as the commission of the crime of criminal possession of a weapon in the fourth degree by a person previously convicted of any crime])  they must be charged not in the indictment, but rather by special information (see CPL 200.60 [FN10]
). If the defendant admits the [*8]previous conviction alleged in the special information, that element of the charged offense is deemed established, and the case must be submitted to the jury as if the fact of the conviction were not an element of the offense (see CPL 200.60 [3] [a]). If the defendant does not admit, the People may prove that element before the jury as a part of their case (see CPL 200.60 [2] [b]). Thus, if the Legislature were to enact a procedure for conducting jury trials on the issue of tolling, it might determine that the facts of the defendant's prior convictions and their resulting incarcerations must be established before the grand jury in the first instance, but that those sentencing matters must then be charged by special information rather than included in the indictment.
Alternatively, the Legislature might decide not to create a regime of jury trials to resolve tolling questions at all. It could instead, consistent with Erlinger, choose to make the maximum statutorily authorized sentence for any given offense, in all circumstances and regardless of criminal history, that currently available for a persistent violent felony offender convicted of that offense, but then direct that the sentence be reduced to that currently available for a first felony or second violent felony offender, as the case may be, if the court finds that the defendant does not have two (or one) predicate violent felony convictions within the tolled ten-year period (see Erlinger, 144 S Ct at 1852 n 1, 1860 n 10 [judge may, consistent with the Sixth Amendment, make findings that reduce the sentence within the authorized statutory range; s/he simply cannot make findings that enhance it]; see also id. at 1873 [Kavanaugh, J., dissenting] [Legislature "could simply enact discretionary sentencing regimes and authorize sentences within a broad range for most crimes, leaving to judges' discretion the choice within that range"]).
Or the Legislature could choose to eliminate the ten-year requirement (and its resulting Erlinger problem) altogether, defining persistent violent felony offenders simply as those with two or more previous violent felony convictions, committed at any time. Or it could simply "jettison longstanding sentencing enhancements for recidivists" (Erlinger, 144 S Ct at 1873 [Kavanaugh, J., dissenting]).
This court takes no position on the relative wisdom of any of these proposals, or others not thought of. Nor is it capable of divining which, if any, of these options the Legislature may decide to take. The point is that only the Legislature can choose among the various and multiplicitous possible approaches. It should do so without delay, but this court cannot usurp its authority in the meantime.
B.
Under our tripartite form of government, it is for the Legislature to determine policy, not the judiciary. There are simply too many choices necessary to the creation and implementation of the jury trial envisioned by the People, choices that an individual trial judge cannot and should not make based on personal predilection about what a fair regime, invented out of whole cloth, ought to look like. Could a judge invoke inherent authority to "make new process" to conclude that a particular sentencing range enacted by the Legislature is too harsh, and thereby substitute the judge's own view as to an appropriate sentence? Surely not (see People v Thompson, 83 NY2d 477 [1994]; see also People v Broadie, 37 NY2d 100, 117 [1975] ["That courts may believe that the Legislature is mistaken, does not lessen the legislative power"]). Thus neither can this court, even on the belief that justice requires that defendant here be sentenced as a persistent violent felony offender, arrogate the authority of the Legislature to determine whether and how a jury trial should now be held. To read Judiciary Law § 2-b (3) so expansively as to permit judges to create jury trials that don't exist and to thereby dictate answers to the countless policy questions attendant to the implementation of such trials risks giving judges almost limitless power to bypass the Legislature to devise "better" forms of proceedings whenever the judge deems it necessary to improve the system or make it more fair (see Matter of Fludd v Goldberg, 51 AD3d 153, 157-158 [1st Dept 2008] ["It is well settled that inherent power is an extremely narrow, carefully circumscribed doctrine. Inherent power should rarely be exercised because it is not subject to direct democratic controls and thus, there is a danger that such power might be wielded arbitrarily or in doubtful cases" (citations omitted)]).
That the procedure for adjudicating persistent violent felony offender status can no longer be implemented as written does not mean that its resultant ineffectiveness creates a gap in the statutory regime that the court can fill as it likes. The criminal law is based on policy choices by legislators, not judges. Plainly the court could not invoke its inherent authority to fill a perceived "gap" in the law by proclaiming certain conduct to be criminal despite the inaction of the Legislature to proscribe it; a court cannot on its own define a crime, proclaim its classification, and dictate its sentencing range (see United States v Bass, 404 US 336, 348 [1971] ["because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity"]).
Nor, when a statute defining a crime is held unconstitutional by a higher court, may a court simply "re-enact" the statute by eliminating or amending the constitutional infirmity where the language of the offending statute fails to reflect a legislative will to construe it otherwise  or how to do so (see Lopez, 2024 NY Slip Op 24207, *10 ["When a court invalidates a criminal statute, later courts do not generally get to write a new statute to avoid the constitutional infirmity while still punishing the conduct the court believes the Legislature would want to sanction"]). Thus, in People v Dietze (75 NY2d 47, 52-53 [1989]), upon striking portions of the New York harassment statute proscribing the use of abusive language as overbroad, insofar as it criminalized a substantial amount of constitutionally protected expression, the Court of Appeals declined to incorporate constitutionally necessary limitations into the statute by judicial construction. "[A]lthough, to be sure, a statute ought normally to be saved by construing it in accord with constitutional requirements, it is basic that the very language of the statute must be fairly susceptible of such an interpretation; put otherwise, the saving construction must be one which the court may reasonably find implicit in the words used by the Legislature. Here, the language of [the statute]  i.e., 'abusive or obscene language' and 'intent to harass [or] annoy'  simply does not even suggest a limitation to violence-provoking or substantial injury-inflicting utterances. An attempt by this court to so limit the statute would, thus, be tantamount to wholesale revision of the Legislature's enactment, rather than prudent judicial construction" (internal quotation marks and citations omitted).
Neither may a court by judicial fiat rewrite an unconstitutional procedural statute in a way not obviously intended by the Legislature (see People v LaValle, 3 NY3d 88, 131 [2004] [striking down New York death penalty statute because of unconstitutional jury deadlock instruction; "We cannot, however, ourselves craft a new instruction, because to do so would usurp legislative prerogative. We have the power to eliminate an unconstitutional sentencing procedure, but we do not have the power to fill the void with a different procedure"]; People v Smith, 63 NY2d 41, 79 [1984] [declining to rewrite earlier death penalty statute to provide constitutionally required mitigating factors; to construe the statute in a manner that would pass constitutional muster would be "wholly at odds with the wording of the statute and would require us to rewrite the statute"]; People v Gersewitz, 294 NY 163, 169 [1945] ["court has no power to supply even an inadvertent omission of the Legislature"]).
The Legislature, however, is more than capable of amending or enacting statutes in response to court decisions (see e.g. People v Ryan, 82 NY2d 497 [1993] [knowledge requirement of controlled substance offense applies to the weight of the material possessed as well as to the element of possession; ruling abrogated by statute (see L 1995, ch 75)]; People v Spivey, 81 NY2d 356 [1993] [reversible error to submit annotated verdict sheet to jury without parties' consent; ruling abrogated by statute (see L 1996, ch 630, § 2)]; New York State Rifle & Pistol Assn., Inc. v Bruen, 597 US 1 [June 23, 2022] [New York's firearms licensing scheme held to violate Second Amendment; Legislature quickly enacted new licensing scheme eliminating unconstitutional "proper cause" requirement (see L 2022, ch 371, § 1 [eff Sept. 1, 2022])]).
The People contend that if the Legislature had been aware that its CPL 400.15 (7) (a) mandate that a persistent violent felony offender determination must be made "before the court without jury" were unconstitutional, it would have preferred to sever the unconstitutional [*9]provision and retain the balance of the persistent violent felony offender regime. And that is surely true. But that truism does nothing to answer the question of how among many alternatives the Legislature would prefer to proceed in order to bring the statutory scheme into compliance with Erlinger. This court is simply not empowered to choose its own favored approach and rewrite the statute accordingly. What I would do as a legislator is irrelevant. As a judge I cannot lawfully conduct this trial (accord Lopez, 2024 NY Slip Op 24207).
Since the court concludes that under current law, it has no power to hold a criminal jury trial on the sole question of when defendant was previously incarcerated, it is unable to constitutionally determine that defendant is a persistent violent felony offender.[FN11]
 Accordingly, defendant must and will be sentenced as a first felony offender [FN12]
unless the People provide notice of a request that defendant be sentenced as a persistent felony offender by submitting forthwith a statement setting forth the factors in defendant's background and prior criminal conduct which they deem relevant for the purpose of sentencing him as a persistent felony offender (see CPL 400.20 [3] [b]).
This opinion shall constitute the decision and order of the court.

Footnotes

Footnote 1: This prior rape conviction underlay the instant predatory sexual assault convictions in that a person is guilty of predatory sexual assault when he commits either rape or criminal sexual act in the first degree having previously been convicted of a felony sex offense (see Penal Law § 130.95 [3]).

Footnote 2: If defendant were adjudicated a persistent violent felony offender, the minimum and maximum lawful sentences on the predatory sexual assault counts would both be 25 years to life imprisonment (see Penal Law § 70.08 [2], [3] [a]). If he were sentenced as a first felony offender, the maximum sentence would remain 25 years to life but the minimum would be 10 years to life (see Penal Law § 70.00 [2] [a], [3] [a] [ii]). On the first-degree sexual abuse counts, his sentencing range as a persistent violent felony offender would run from a minimum of 12 years to life to a maximum of 25 years to life (see Penal Law §§ 70.08 [2], [3] [c]; 70.02 [1] [c]). As a first felony sex offender, the minimum incarceratory sentence would be 2 years (plus postrelease supervision of between 3 and 10 years) and the maximum would be 7 years (plus postrelease supervision) (see Penal Law §§ 70.02 [1] [c], [3] [c]; 70.80 [1] [b], [6]; 70.45 [2-a] [d]).

Footnote 3: Apprendi involved a New Jersey statute that imposed enhanced penalties if the crime at issue were committed as a "hate crime" (see NJ Stat Ann § 2C:44-3 [e] [West Supp 1999-2000]).

Footnote 4: The Supreme Court later extended its rule to the federal sentencing guidelines, as well, holding that their mandatory application was unconstitutional and proclaiming them instead to be merely advisory (see United States v Booker, 543 US 220 [2005]).

Footnote 5: A "persistent felony offender" is "a person, other than a persistent violent felony offender as defined in [Penal Law §] 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies" (Penal Law § 70.10 [1] [a] [emphasis added]).

Footnote 6: The continued viability of the Almendarez-Torres exception has been repeatedly called into question by Apprendi and its progeny. Indeed, since Apprendi, the Supreme Court has hinted that, when the issue is squarely presented to it, it may well overrule Almendarez-Torres and thereby hold that the fact of a prior conviction no longer constitutes an exception to the general rule of Apprendi (see e.g. Apprendi, 530 US at 489-490 ["it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested" (internal footnote omitted)]). And in his concurrence in Apprendi, Justice Thomas specifically recanted his support for Almendarez-Torres, for which he had provided the critical fifth vote (see 530 US at 520-521]). Justice Thomas reaffirmed this recantation in Shepard v United States (544 US 13, 27-28 [2005] [Thomas, J., concurring]), stating that "a majority of the Court now recognizes that Almendarez-Torres was wrongly decided. The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres" (internal citations omitted). Now in Erlinger, the Court has again noted this controversy (see 144 S Ct at 1853 ["Still, no one in this case has asked us to revisit Almendarez-Torres. Nor is there need to do so today. In the years since that decision, this Court has expressly delimited its reach"]).

Footnote 7: Of course, in a case that does not involve tolling of the mandated ten-year period, Erlinger will have no impact on the constitutionality of the current statutory scheme for sentencing persistent violent felony offenders, since such determinations fall squarely within the Almendarez-Torres exception. It is only where, as here, the fact of the prior convictions alone (along with their jurisdictions and dates) is insufficient to establish that the defendant is a persistent violent felony offender that Sixth Amendment concerns arise. When additional factual findings as to prior incarceratory periods must be made in order to permit enhanced sentencing based on tolling, the right to trial by jury is implicated.

Footnote 8: Inasmuch as CPL 400.15 (7) (a) further provides that the burden of proof at the hearing is upon the People and that "a finding that the defendant has been subjected to a predicate violent felony conviction must be based upon [admissible] proof beyond a reasonable doubt," the statute is, however, not unconstitutional under the Due Process Clause of the Fifth Amendment (see US Const Amend V; Matter of Winship, 397 US 358 [1970]).

Footnote 9: Moreover, questions of tolling in need of resolution are not limited to persistent violent felony offenders, but may arise in a variety of recidivist sentencing contexts (see Penal Law § 70.06 [1] [b] [v] [second felony offenders]; Penal Law § 70.04 [1] [b] [v] [second violent felony offenders]; Penal Law § 70.07 [3] [second child sexual assault felony offenders; fifteen-year tolling period]).

Footnote 10: "When the fact that the defendant has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter, an indictment for such higher offense may not allege such previous conviction" (CPL 200.60 [1]). "An indictment for such an offense must be accompanied by a special information, filed by the district attorney with the court, charging that the defendant was previously convicted of a specified offense" (CPL 200.60 [2]). Except in certain statutorily specified situations, the People "may not refer to such special information during the trial nor adduce any evidence concerning the previous conviction alleged therein" (id.).

Footnote 11: The People contend that if defendant cannot be lawfully adjudged a persistent violent felony offender, he can and should instead be sentenced as a persistent felony offender under Penal Law § 70.10. A persistent felony offender is defined as a person, "other than a persistent violent felony offender," who stands convicted of a felony after having previously been convicted of two or more felonies (Penal Law § 70.10 [1] [a]), pursuant to certain criteria (see Penal Law § 70.10 [1] [b]). When "it appears that a defendant who stands convicted of a violent felony offense . . . has previously been subjected to two or more predicate violent felony convictions . . . and may be a persistent violent felony offender" (CPL 400.16 [1]), and when "information available to the court or to the [P]eople prior to sentencing for a violent felony offense indicates that the defendant may have previously been subjected to a predicate violent felony conviction" (CPL 400.15 [2]), the People must before sentence is imposed file a statement setting forth the date and place of each alleged predicate violent felony conviction (see CPL 400.16 [1], [2]; 400.15 [2]), and a determination must be made as to whether the defendant is a persistent violent felony offender (see CPL 400.16 [1], [2]; 400.15 [3], [4], [5], [7]). Prior to Erlinger, defendant, who "appears" not to be "other than a persistent violent felony offender" as defined in the statute, and who has not admitted the allegations in the statement filed against him (see CPL 400.15 [3]), could not be sentenced as a persistent felony offender unless, after a hearing held pursuant to CPL 400.15 (5) and (7), he were found not to be a persistent violent felony offender  in other words, found to be "other than a persistent violent felony offender." But after Erlinger, defendant may not, under current law and in the absence of action by the Legislature, be constitutionally found to be a persistent violent felony offender at all. Accordingly, he is plainly "other than a persistent violent felony offender" and so may be sentenced as a persistent felony offender if, following a hearing, the court determines that a persistent felony offender sentence should be imposed because it is of the opinion that his history and character and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision are warranted to best serve the public interest (see CPL 400.20 [1], [2]; Rivera, 5 NY3d 61).

Footnote 12: Since sentences on both of defendant's predicate violent felony convictions were imposed more than ten years before commission of the felony of which he presently stands convicted, and since he cannot be sentenced as a persistent violent felony offender without a jury determination (or an admission) as to the tolling periods alleged, neither can he be sentenced as a second violent felony offender, for the same reasons (see Penal Law § 70.04 [1] [b] [iv], [v]).