People v Rodney (2024 NY Slip Op 24304)

[*1]

People v Rodney

2024 NY Slip Op 24304

Decided on December 2, 2024

Supreme Court, New York County

Mandelbaum, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 2, 2024
Supreme Court, New York County

The People of the State of New York

against
David Rodney, Defendant.

Ind. No. 1370/2015

For the Defendant: David Rodney, defendant pro se
For the People: Alvin L. Bragg, Jr., District Attorney, New York County (Evan Brocato of counsel)

Robert M. Mandelbaum, J.

Sentenced in 2017 as a second felony drug offender previously convicted of a 1980 violent felony, defendant now moves to set aside his sentence as violative of the constitutional rule set forth in Erlinger v United States (602 US 821 [2024]).
A second felony drug offender is a person who stands convicted of a drug felony after having previously been subjected to one or more "predicate felony convictions" (see Penal Law §§ 70.70 [1] [b]; 70.06 [1]). To constitute a predicate felony conviction, sentence on the conviction must, among other criteria, "have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted" (Penal Law § 70.06 [1] [b] [iv]). In calculating this ten-year period, "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded," and such ten-year period shall be extended by a period or periods equal to the time served under such incarceration (Penal Law § 70.06 [1] [b] [v]).
Three years after defendant's conviction became final,[FN1]
the United States Supreme Court decided Erlinger, the latest in a string of decisions analyzing the extent to which, under the Fifth and Sixth Amendments (see US Const Amends V, VI), facts necessary for sentence enhancement must be found by a jury beyond a reasonable doubt (see Apprendi v United States, 530 US 466 [2000]; Ring v Arizona, 536 US 584 [2002]; Blakely v Washington, 542 US 296 [2004]; United States v Booker, 543 US 220 [2005]; Cunningham v California, 549 US 270 [*2][2007]; Alleyne v United States, 570 US 99 [2013]; Hurst v Florida, 577 US 92 [2016]).
When the fact of a prior conviction alone authorizes an increased sentence, that fact need not be found by a jury (see Almendarez-Torres v United States (523 US 224 [1998]). But when additional facts beyond the mere "fact of a prior conviction" (which includes "what crime, with what elements, the defendant was convicted of" [Mathis v United States, 579 US 500, 512 (2016)]) must be found before recidivist sentencing may be imposed, those facts may not be determined by a judge.
Thus, where, as here, the defendant's status as a second felony drug offender is premised on his having been incarcerated for certain periods of time alleged to have sufficiently tolled and extended the ten-year period of Penal Law § 70.06 (1) (b) (iv), the facts pertaining to that incarceration and tolling must, under Erlinger, be found by a jury beyond a reasonable doubt. Since New York law currently does not permit jury trials on these questions (see People v Banks, — Misc 3d —, 2024 NY Slip Op 24241 [Sup Ct, NY County 2024]; People v Lopez, — Misc 3d —, 2024 NY Slip Op 24207 [Sup Ct, NY County 2024]; People v Perry, — Misc 3d —, 2024 NY Slip Op 24293 [Sup Ct, Kings County 2024]; People v Gardner, — Misc 3d —, 2024 NY Slip op 24294 [Sup Ct, Queens County 2024]), defendant, were he to be convicted now, could not, under Erlinger, be lawfully sentenced as a second felony drug offender unless he "freely admitted" these facts (Erlinger, 602 US at 834).
Erlinger, however, is not retroactive. In Teague v Lane (489 US 288 [1989]), the Supreme Court held that when a case announces a "new rule" — defined as a constitutional rule of criminal procedure that "breaks new ground or imposes a new obligation on the States or the Federal Government," or, put differently, whose "result was not dictated by precedent existing at the time the defendant's conviction became final" (id. at 301) — that rule will not be applied retroactively to cases on collateral review (see id. at 310) unless it falls within one of two narrow exceptions: (1) it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe (see id. at 311), or (2) it mandates new "watershed" procedures without which the fundamental fairness of the proceeding and "the likelihood of an accurate conviction is seriously diminished" (id. at 313). The Court explained, however, that because such watershed procedures "would be so central to an accurate determination of innocence or guilt," it was hard pressed to imagine any such "components of basic due process" that had not yet emerged (id.; see also Edwards v Vannoy, 593 US 255, 258 [2021]).
Erlinger announced a "new rule" within the meaning of Teague. Before Erlinger, the Supreme Court's Apprendi jurisprudence had always involved sentence enhancements based on judge-found facts pertaining to the manner of, or circumstances surrounding, the commission of the present crime  that is, the crime for which sentence was now being imposed (see Apprendi [judge, not jury, found that crime was committed with racial bias]; Ring [judge found that murder was committed in expectation of receiving something of pecuniary value and "in an especially heinous, cruel or depraved manner," thereby authorizing death penalty]; Blakely [domestic-violence-based kidnapping found to have been committed with "deliberate cruelty"]; Booker [one judge found that defendant possessed an additional quantity of cocaine beyond the amount proved at jury trial and was guilty of obstructing justice; second judge found that defendant possessed an additional quantity of cocaine and "had been an organizer, leader, manager, or supervisor in the criminal activity"]; Cunningham [judicial findings of particular vulnerability of the victim and of defendant's violent conduct indicating serious danger to the [*3]community]; Alleyne [judge found that defendant "brandished" firearm during robbery, resulting in enhanced minimum sentence]; Hurst [findings that murder was especially "heinous, atrocious, or cruel" and that it occurred while defendant was committing a robbery]). But in Erlinger, the Court for the first time mandated jury trials for a factual determination of circumstances pertaining not to the present crime, but to a past offense (see Erlinger [judicial finding that past offenses had been committed on "different occasions"]; see also Erlinger, 602 US at 855 [Kavanaugh, J., dissenting] ["Under Almendarez-Torres, legislatures may assign to judges the task of finding facts related to a defendant's past crimes — that is, to his 'recidivism'" (emphasis added)]; id. at 857 [Kavanaugh, J., dissenting] ["Apprendi drew a clear line between facts about prior crimes and facts about present crimes"]; id. at 897 [Jackson, J. dissenting] [Erlinger "push(es) the Apprendi doctrine into the realm of facts related to recidivism, which Apprendi had excluded"]; id. at 897 [Jackson, J. dissenting] ["before today, recidivism facts in particular have been specifically reserved for judges to determine"]).
Moreover, insofar as Erlinger expressly contemplated that its holding that juries must decide even recidivist sentencing questions should best be handled through bifurcated trials (see 602 US at 847 [a "common and often fairest practice" (internal quotation marks and citations omitted)]; id. at 848 ["States that have not already done so can likewise adjust to any state-law implications of our straightforward application of Apprendi to (tolling requirements)" (internal quotation marks and citation omitted)])  even though bifurcated trials have been and remain "rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure" (Spencer v Texas, 385 US 554, 568 [1967])  the decision clearly "imposes a new obligation on the States" and therefore constitutes a "new rule" for that reason, as well (Teague, 489 US at 301).
Nor was Erlinger's result "dictated by precedent existing at the time the defendant's conviction became final" (id. [emphasis omitted]), since "all 12 Courts of Appeals" had, before Erlinger, interpreted Almendarez-Torres to permit judicial resolution of the very "different occasions" inquiry that Erlinger now prohibited (Erlinger, 602 US at 842 n 4 [internal quotation marks and citation omitted]; see also People v Smith, 28 NY3d 191, 206 [2016] ["A result is not deemed 'dictated by precedent' . . . unless it would have been 'apparent to all reasonable jurists'" (quoting Lambrix v Singletary, 520 US 518 [1997])]; People v Baret, 23 NY3d 777 [2014] ["a constitutional rule that is 'susceptible to debate among reasonable minds' qualifies as a new rule" (quoting Butler v McKellar, 494 US 407, 415 [1990])]).
Since Erlinger thus established a new rule, not subject to either of the Teague exceptions,[FN2]
it may not be applied retroactively to cases on collateral review (see People v Eastman, 85 NY2d 265, 275 [1995]; see also Erlinger, 602 US at 859 n 3 [Kavanaugh, J., dissenting] ["For any case that is already final, the Teague rule will presumably bar the defendant from raising today's new rule in collateral proceedings" (citations omitted)]).
Nor is Erlinger retroactive under state law. In determining state retroactivity, courts must "weigh three factors to determine whether a new precedent operates retroactively: the purpose to [*4]be served by the new standard; the extent of the reliance by law enforcement authorities on the old standard; and the effect on the administration of justice of a retroactive application of the new standard. The second and third factors are, however, only given substantial weight when the answer to the retroactivity question is not to be found in the purpose of the new rule itself. 'Thus, where otherwise there could be a complete miscarriage of justice, current constitutional standards that go to the heart of a reliable determination of guilt or innocence have been substituted for those in effect at the time of trial'" (Policano v Herbert, 7 NY3d 588, 603 [2006] [internal citation and quotation marks omitted], quoting People v Pepper, 53 NY2d 213, 221 [1981]).
"Under the first and most important factor, 'current constitutional standards that go to the heart of a reliable determination of guilt or innocence' will be applied retroactively, but 'decisions which are only collateral to or relatively far removed from the fact-finding process at trial' apply prospectively only" (Baret, 23 NY3d at 799-800, quoting Pepper, 53 NY2d at 221). Erlinger, however, "has nothing to do with a reliable determination of guilt or innocence" (Baret, 23 NY3d at 800). Rather, Erlinger, as relevant here, ensures simply that the authorized sentence for a recidivist already reliably determined to be guilty will be enhanced only after a jury has determined that the defendant was incarcerated to the extent necessary to justify extension of the ten-year period mandated by New York law.
Just as "[t]he values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amendment right to jury trial" (DeStefano v Woods, 392 US 631, 634 [1968]), neither would they be served by requiring resentence on the same grounds. To be sure, "[t]he right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them. But it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart" (Schriro, 542 US at 358). "[T]he question is whether judicial factfinding so seriously diminishes accuracy that there is an impermissibly large risk of punishing conduct the law does not reach" (id. at 355-356 [internal quotation marks and citations omitted]). Plainly, tolling determinations rendered by judges under our long-existing recidivist sentencing regime do not "seriously diminish[] accuracy" (id. [emphasis omitted]) and in no way constitute a "complete miscarriage of justice" (Pepper, 53 NY2d at 221). Indeed, there is no reason to believe that judicial findings on incarceratory tolling, based on memorialized correction records, are any less accurate than those made by juries (see Schriro, 542 US at 356 ["for every argument why juries are more accurate factfinders, there is another why they are less accurate"]). "In short, nonretroactivity poses no danger of a miscarriage of justice" (Policano, 7 NY3d at 604).
The second and third Pepper factors — reliance on the old standard and the effect of retroactivity on the administration of justice — also weigh heavily against retroactivity. New York courts have long relied on the Almendarez-Torres exception in upholding aspects of our recidivist sentencing regime (see e.g. People v Rosen, 96 NY2d 329 [2001]; People v Rivera, 5 NY3d 61 [2005]; People v Quinones, 12 NY3d 116 [2009]; People v Sweeper, 15 NY3d 925 [2010]; People v Bell, 15 NY3d 935 [2010]; People v Frazier, 16 NY3d 36 [2010]; People v Prindle, 29 NY3d 463 [2017]; People v Grivas, 281 AD2d 346 [1st Dept 2001]; People v Wilkonson, 281 AD2d 373 [1st Dept 2001]; People v Melendez, 282 AD2d 409 [1st Dept 2001]; [*5]People v Feliciano, 285 AD2d 371 [1st Dept 2001]; People v Mendoza, 59 AD3d 182 [1st Dept 2009]; People v Miles, 5 Misc 3d 271 [Sup Ct, NY County 2004], affd 49 AD3d 446 [1st Dept 2008]; see also Erlinger, 602 US at 897 [Jackson, J. dissenting] [Erlinger "push(ed) the Apprendi doctrine into the realm of facts related to recidivism, which Apprendi had excluded, and which lower courts have nearly uniformly reserved for sentencing judges in the two decades since that opinion issued"]). To apply Erlinger retroactively would upend countless sentences imposed over many decades following convictions both by plea and after trial (see Baret, 23 NY3d at 800 ["the sheer volume of prosecutions disposed of by guilty plea (see Missouri v Frye, 566 US 134, 143 [2012] ['(N)inety-four percent of state convictions are the result of guilty pleas']), weigh heavily against retroactive application"]).
Although New York law does not currently authorize jury trials to determine periods of tolling due to prior incarceration, were the Legislature to enact a system of bifurcated trials to resolve that question, witnesses would need to be called to admit sometimes-decades-old correction records that would almost always be "straightforward" (Erlinger, 602 US at 842), or even incontrovertible, a resource-intensive exercise with little benefit to either defendants or the truth-seeking function. "In addition, retroactive application would potentially flood the criminal justice system with CPL [440.20] motions" to set aside sentences that were properly imposed "under the law as it existed at the time" (Policano, 7 NY3d at 604).
Accordingly, the motion to set aside the sentence is denied.
This opinion shall constitute the decision and order of the court.

Footnotes

Footnote 1:Defendant's conviction was affirmed by the Appellate Division on April 29, 2021 (see People v Rodney, 193 AD3d 657 [1st Dept 2021]), and leave to appeal was denied by a Judge of the Court of Appeals on June 30, 2021 (see People v Rodney, 37 NY3d 968 [2021]). Defendant's conviction thus became final 90 days later, on September 28, 2021, when his time for filing a petition for a writ of certiorari in the United States Supreme Court expired (see Rules of US Sup Ct rule 13 [1]; Clay v United States, 537 US 522, 527 [2003]).

Footnote 2:Erlinger did not announce a watershed rule of criminal procedure (see Schriro v Summerlin, 542 US 348 [2004]; Edwards, 593 US at 272 ["New procedural rules do not apply retroactively on federal collateral review. The watershed exception is moribund. It must be regarded as retaining no vitality" (internal quotation marks and citation omitted)]).